UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| WILLIAM L. MANNING, <br><br> Plaintiff, <br><br> v. <br><br> GLADIUX, CONFINMENT OFFICER, KITCHEN STAFF, NURSES STAFF, DOCTOR, COMUNICATION STAFF, and ALLEN COUNTY JAIL, <br><br> Defendants. | CAUSE NO. 1:23-CV-298-PPS-JEM |

OPINION AND ORDER

William L. Manning, a prisoner without a lawyer, filed a complaint about the medical care he received after he injured himself falling in the shower at the Allen County Jail.[1] ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

---

[1] After Manning filed this complaint, he submitted copies of grievances related to his medical care. ECF 5. Those grievances, some of which post-date the filing of the complaint, were attached to the complaint as exhibits and are discussed in this order. ECF 6; *see* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

As a pretrial detainee, Manning is entitled to constitutionally adequate medical care under the Fourteenth Amendment, which requires jail staff to take "reasonable available measures" to address a "risk of serious harm" to Manning's health or safety. *Pittman v. Madison Cnty.*, 108 F.4th 561, 572 (7th Cir. 2024). Whether a defendant provided reasonable care is determined by a purely objective standard. *Id* at 570. First, the plaintiff must allege the defendant did a volitional act or made a deliberate choice not to act. *Id* at 571. "[L]iability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process." *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015) (quotation marks omitted) (emphasis in original). Then, the reasonableness of that action or inaction is assessed based on whether "reasonable officers under the circumstances would have understood the high degree of risk involved, making the consequences of the defendants' conduct obvious." *Pittman*, 108 F.4th at 572 (emphasis omitted). Whether the defendant actually knew that his action or inaction would cause harm is irrelevant under the Fourteenth Amendment. *Id.* "Reasonableness, in turn, must be determined in light of the totality of the circumstances." *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020).

Manning alleges that while taking a shower on June 27, 2023, he slipped on a bar of soap and fell, hitting his head and hurting his neck, lower back, ribs, and hand. He was able to walk back to his room and get dressed. He tried to call for help over the speaker box, but no confinement officer answered. So, he walked to the guards' station and told the confinement officer there what happened. The officer acted like he didn't care and didn't take Manning to medical.

This confinement officer's actions were not objectively unreasonable. Manning faults him for not taking him immediately to medical, but the complaint provides no allegations that allow a reasonable inference that Manning required emergency care and could not follow the usual process to request medical care. He was conscious with no visible wounds, and he was able to talk normally and walk on his own. This confinement officer was not Manning's only avenue to obtain non-emergency medical care.

After he left the guard's station, Manning returned to his cell and laid down in pain. The next morning during med pass, he told a nurse what had happened, and she gave him ibuprofen and Tylenol. He also submitted a grievance, complaining that he slipped and fell in the shower, and it felt like he rebroke his lower back. ECF 1-2 at 9. He reported that it hurt to sit, when lying down he could barely sit up again, he could not get his arms over his shoulders, and it hurt to walk. He was put on sick call.

After this, Manning continued filing grievances and asking nurses for medical attention. On June 30, 2023, three days after his fall, he filed a grievance stating that he needed to go to the hospital because of his fall. ECF 1-2 at 10. He said when he lays on his back, he cannot get up without help and can't even take his t-shirt off. He reported that he believed he dislocated one of his fingers or broke a knuckle. The response told him that he was scheduled for sick call. According to the complaint a nurse examined him at sick call on July 1, 2023. She saw that his hand was still swollen and told him that his back was bruised. She said she would let the doctor know, and later that day a correctional officer gave him a bag of ice.

The next day, on July 2, 2023, five days after the fall, Manning asked for another bag of ice but never got one. He does not say who he asked for the ice. He submitted another grievance that day, asking to go to the hospital for x-rays. ECF 1-2 at 8. He was told, "When you were evaluated by the nurse on 07/01/2023 after your fall, the on-call provider did NOT order any x-rays, as they are not indicated at this time."

Manning submitted another grievance on July 3, 2023, now six days after his fall. He asked to get looked at by a "real doctor" because he said it was obvious that his finger was dislocated and he still can't walk down the stairs after his injury. ECF 1-2 at 5. He submitted another grievance that same day asking for an x-ray or to be seen by a "real doctor" because his fingers were still numb, his left leg was giving out, and it felt like hundreds of little needles were poking his leg. ECF 1-2 at 4. He was scheduled for sick call. He alleges he also spoke to an unidentified nurse about getting an x-ray because he felt like there were hundreds of needles poking his left foot and it kept going numb. She said she would tell the doctor and that he would get some ice, but he never got the ice.

Manning submitted another grievance on July 8, 2023, eleven days after the accident, reporting that just walking down the ramp to see the doctor hurt so bad it made him cry, and he wanted an x-ray to see why. ECF 1-2 at 6. He complained that when he saw the doctor two weeks ago, all the doctor did was look at him and give him a pain pill. In response, the grievance responder explained that Manning was evaluated by the doctor the day before, on July 7, 2023, and the doctor did not order any x-rays.

4

Instead, he prescribed Tylenol and Cymbalta for the pain. Therefore, the grievance responder found there was no reason to transfer him to the hospital at this time.

Manning complains that, as of July 12, 2023, when he submitted this complaint just two weeks after the accident, he is still in pain. He can't sleep on his left side because of a fractured rib, and he can't sleep on his back because he can't roll over without help. He alleges his right hand still looks like it has a broken knuckle, but the doctor won't even look at it. He asks for x-rays and to go to the hospital, but medical staff refuse his request.

On July 17, 2023, after he filed this lawsuit, Manning submitted two grievances. In one, he stated that the medication he was given (duloxetine/Cymbalta) was working and he could no longer feel the pain in his back. ECF 1-2 at 11. In the other grievance, he stated that he did not want any pills. He wanted to go to the hospital and fix the problem, rather than just mask the pain. ECF 1-2 at 7. In response, Manning was told that he has appointments scheduled according to the doctor office's availability, and he was on sick call.

On July 22, 2023, Manning submitted another grievance, complaining that it has been almost a month since he fell and his back is still hurting. ECF 1-2 at 12. He said that the medication he has been given makes him sleep but doesn't take the pain away when he wakes up. He is sore from trying to sleep only on his right side. In response, the responder noted that he had been evaluated for this complaint several times and the doctor ordered Cymbalta to treat the pain. That medication requires 4 to 6 weeks to take

5

effect, so it was too soon to try another treatment plan. Manning, however, was approved for an extra mat.

In his complaint, Manning sues the "Doctor of Allen County Jail" and the "Nurse's Staff, Allen County Jail." ECF 1. Assuming there is just one doctor who works at the Allen County Jail, that is specific enough to identify the proper defendant. But he cannot sue the "Nurses Staff" as a whole because liability under 42 U.S.C. § 1983 is personal, which means that the individual wrongdoer must be named, as a defendant can be held liable only for their own actions. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) ("[P]ublic employees are responsible for their own misdeeds but not for anyone else's."). However, even if Manning had identified the individual nurses who treated him, this complaint could not proceed because he does not plausibly allege that the treatment he received from any of the nurses was objectively unreasonable.

At heart, Manning alleges he was misdiagnosed and the medical staff refused to order the x-rays that would have confirmed that he had a broken bone. The Fourteenth Amendment, however, does not turn medical malpractice into a constitutional violation. *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 353 (7th Cir. 2018) (rejecting argument that the objective reasonableness standard mirrors medical malpractice claims). And Manning alleges nothing more than a disagreement with the medical professionals' treatment decisions. *See Bell v. Blaesing*, 844 F. App'x 924, 926 (7th Cir. 2021) (upholding dismissal of Fourteenth Amendment claim against healthcare administrator who allegedly "reviewed his x-rays, examined his teeth, and 'reached the wrong conclusion' that his condition did not necessitate treatment beyond the facility"

because, even if she was mistaken, that "difference in opinion over the course of treatment" suggests only negligence, not a constitutional violation). The nurses here each treated his pain symptoms and appropriately deferred to the doctor as to whether an x-ray was necessary. A nurse may rely on a treating physician's instructions, absent an obvious risk of harm in following those instructions—an exception not present on these facts. *See McCann v. Ogle Cnty.*, 909 F.3d 881, 887 (7th Cir. 2018).

As to the doctor, there are no facts alleged to suggest it was objectively unreasonable to see if pain medication would resolve the problem before turning to other solutions. Manning was in a lot of pain but otherwise mobile. At one point, Manning speculates that his finger was broken or dislocated, but he provides no objective facts in support that would alert a medical professional to that possible diagnosis. At some point, the doctor cannot continue to use a treatment plan that is ineffective. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). But that point in this case is not weeks after an injury. The allegations in the complaint do not plausibly allege that either the nurses who provided pain management or the doctor who chose not to order an x-ray, provided objectively unreasonable care in the weeks following his fall.

Manning also sues Sheriff Gladieux, presumably because he is in charge of the jail. But the sheriff cannot be held liable under 42 U.S.C. § 1983 just because he supervises the jail, unless he, too, had some involvement in the alleged constitutional violation. *See Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). There are no allegations in the complaint that the sheriff was aware of Manning's situation. Manning

7

sues the "Kitchen Staff of Allen County Jail" and the "Communication Staff," but does not say why he included these defendants. And, finally, he sues the Allen County Jail. But the jail is a building, not a suable entity. *See Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). No claims may proceed against these defendants.

This complaint does not state a claim for which relief can be granted. If Manning believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS William L. Manning until **September 16, 2024**, to file an amended complaint; and

(2) CAUTIONS William L. Manning if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on August 21, 2024.

s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT